IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

GARY LYNN CHRISTIAN,

      Plaintiff,

v.                              Case No. 3:18-cv-01370

ADRIA DARLENE HALE;
RICHARD HALE; and
LAKKEN HILL,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

    Pending before the Court are the Motion to Dismiss of Defendants Adria Darlene Hale and Richard Hale, (ECF No. 17), and Plaintiff's Motion for the Appointment of Counsel, (ECF No. 21). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

    Looking first at the Motion for the Appointment of Counsel, the undersigned **DENIES** same. (**ECF No. 21**).Plaintiff has no constitutional right to counsel in an action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(1) (2010); *see also Hardwick v. Ault,* 517 F.2d 295, 298 (5th Cir. 1975). Although the Court has some discretion in assigning counsel, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has clearly stated that motions for the appointment of counsel in civil actions should be granted "only in exceptional cases." *Cook v. Bounds,* 518 F.2d 779, 780 (4th Cir.

1

1975). When determining whether a particular case rises to that level, the Court must consider the complexity of the claims in dispute and the ability of the indigent party to present them. *Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa,* 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *see also Branch v. Cole,* 686 F.2d 264, 266 (5th Cir. 1982). ("[N]o comprehensive definition of exceptional circumstances is practical. The existence of such circumstances will turn on the quality of two basic factors-the type and complexity of the case, and the abilities of the individuals bringing it.") (footnote omitted).

Here, Plaintiff argues that his case justifies the appointment of counsel because he is indigent, cannot afford to hire counsel, and has limited knowledge of the law. Unfortunately, these are not exceptional grounds meriting the assignment of counsel. Most *pro se* plaintiffs are unable to afford counsel and have limited knowledge of the law; accordingly, Plaintiff's situation is the norm rather than the exception. Additionally, Plaintiff has clearly articulated his claims, which are not particularly complex, and has filed a logical and focused memorandum in opposition to Defendants' Motion to Dismiss. Moreover, as explained below, Plaintiff's amended complaint fails to state a constitutional violation. As such, there is no justification for assigning counsel to this case.

With respect to the pending Motion to Dismiss, the undersigned has thoroughly considered the motion and Plaintiff's response in opposition, (ECF No. 20), and **FINDS** that the amended complaint fails to state a claim against Defendants Adria Darlene Hale and Richard Hale for which relief may be granted. Accordingly, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** the Motion to Dismiss, (**ECF No. 17**); **DISMISS** the amended complaint against these defendants, with prejudice, and **REMOVE** them from the caption of the case.

The final defendant, Lakken Hill, has not been served with process; therefore, the undersigned has reviewed the claims against Defendant Hill under the standards set forth in 28 U.S.C. § 1915(e) and **FINDS** that the amended complaint also fails to state a compensable claim against Defendant Hill. Therefore, the undersigned further **RECOMMENDS** that the presiding District Judge **DISMISS** the complaint against said defendant and **REMOVE** this case from the docket of the Court.

## I.    <u>Relevant History and Allegations</u>

On October 18, 2018, Plaintiff Gary Christian filed a *pro se* complaint, alleging that he had been discriminated against on the basis of his sexual orientation. (ECF No. 2). Plaintiff claimed that he had been fired from his inmate employment assignment at the Western Regional Jail and Correctional Facility ("WRJ") based upon a pretense and without due process. (*Id*.). He asked the Court to reinstate his employment and award him back pay.

On November 7, 2018, the undersigned issued an Order advising Plaintiff that his complaint failed to state a cognizable claim. (ECF No. 4). Plaintiff was instructed to amend his complaint to cure the identified deficiencies. On November 28, 2018, Plaintiff amended his complaint. (ECF No. 5). In the amended pleading, Plaintiff alleges that the defendants harassed him on a daily basis at his job in the WRJ's kitchen, because of his sexual orientation. Plaintiff asserts that the defendants made vile comments to him, attempted to humiliate him, and ultimately falsely accused him of smoking on the job to effectuate his dismissal from employment. Although Plaintiff was later permitted to return to work, he claims that he was demoted, forcing him "back to square one." (*Id.* at 2, 5).

On November 30, 2018, Plaintiff's Application to Proceed Without Prepayment of

Fees and Costs was granted and summonses were issued for the defendants. (ECF Nos. 6, 7, 8, 9, 10). Defendants Adria Darlene Hale and Richard Hale were served with a summons and complaint by the United States Marshals Service, but Defendant Lakken Hill was not located or served. On January 29, 2019, Defendants Adria and Richard Hale filed a motion to dismiss and supporting memorandum. (ECF Nos. 17, 18).

In their motion, Defendants raise four grounds that they contend entitle them to dismissal from this action. First, Defendants argue that Plaintiff has failed to exhaust his administrative remedies. Defendants contend that while Plaintiff claims to have filed a grievance about his termination from employment, he does not claim to have filed a grievance regarding the alleged harassment and discrimination. Moreover, Plaintiff does not allege any follow up on the grievance to demonstrate exhaustion. Defendants state that the duty to exhaust administrative remedies is mandatory; therefore, Plaintiff's unexhausted claims against them must be dismissed.

Second, Defendants argue that Plaintiff fails to state a cognizable claim under 42 U.S.C. § 1983, because Defendants are employed by Trinity Services Group, Inc., a private contractor, and thus are not "state actors." In addition, Defendants contend that Plaintiff's amended complaint fails to describe conduct by Defendants that rise to the level of constitutional violations and further fails to attribute any specific injury to the alleged wrongful conduct of Defendants.

Third, Defendants assert that Plaintiff's claims are based on the doctrine of *respondeat superior*, but Plaintiff's amended complaint fails to satisfy the requirements of such a claim under § 1983. Defendants indicate that they are the food service supervisor and food service director at the WRJ, working for a private company. According to Defendants, to state a claim for *respondeat superior* in such a case, Plaintiff must

4

demonstrate that Defendants were acting pursuant to an unconstitutional policy, practice, or custom of their private employer. Because Plaintiff has not alleged any such policy, procedure, or custom, he fails to state a claim.

Finally, Defendants argue that Plaintiff cannot overcome the litigation bar found in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). Section 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Defendants indicate that Plaintiff claims that he was scared and emotionally injured as a result of the verbal harassment he received from Defendants, but does not describe any physical injury in his amended complaint. Consequently, Defendants assert, Plaintiff is barred from making a claim for money damages.

In response to the motion to dismiss, Plaintiff contends that he exhausted available administrative remedies by submitting grievance forms "in accordance with Dept. of Corrections rules and regulations," and he attaches a copy of a grievance form to his amended complaint. (ECF No. 5 at 5; ECF No. 20 at 1). Plaintiff adds that he submitted multiple grievance forms to the WRJ regarding this matter. Furthermore, Plaintiff argues that Defendants are state actors under 42 U.S.C. § 1983, because they alone manage and direct food service at the WRJ, which is operated by the West Virginia Division of Corrections and Rehabilitation ("DCR"), a West Virginia state agency. Plaintiff reiterates that Defendants made vile comments to him for a period of six months, which were intended to hurt and humiliate him. As a result, Plaintiff suffered emotional distress, but also experienced associated physical injuries; including, intestinal distress, nausea, headaches, and diarrhea. Accordingly, Plaintiff posits that he satisfies the "physical

injury" requirement of the PLRA.

## II.    **Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A case is "frivolous" when it lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Anders v. California*, 386 U.S. 738, 744 (1967), and lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 327-28. Similarly, a complaint fails to state a compensable claim when viewing the factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

In the present case, two of the defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). The Supreme Court explained the "plausibility" standard in *Iqbal*, stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are

> "merely consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 556 U.S. at 678 (citations omitted).

Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir. 2007)). While the Court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of legal conclusions that are "couched as ... factual allegation[s]." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 554). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint. *Id.* This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint must contain sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Plaintiff alleges wrongdoing that entitles him to relief under 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 provides as follows:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for

> redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

In order to state a cause of action under § 1983, Plaintiff must present facts showing that: (1) the defendant deprived the plaintiff of a right secured by the Constitution or laws of the United States; and (2) that the defendant did so under color of state law. *Johnson v. Capitol City Lodge No. 74, Fraternal Order of Police*, 477 F.2d 601, 602 (4th Cir. 1973); *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. Moreover, a complaint that states plausible facts and accepted legal theories under § 1983 may nonetheless be subject to dismissal on initial screening, or on a motion to dismiss, if the defendant is immune from liability.

## III. <u>Analysis</u>

As stated, Defendants Adria Darlene Hale and Richard Hale raise four grounds for dismissal. Each ground is addressed below. In addition, the claims against Lakken Hill are examined under the screening standard set forth in 28 U.S.C. § 1915(e)(2)(B).

### A. *Exhaustion*

The PLRA requires prisoners to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those

remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted). The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court ... and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

In *Ross v. Blake*, the Supreme Court of the United States ("Supreme Court") considered a case in which a Maryland state inmate filed a § 1983 complaint alleging that a correctional officer used excessive force against him and that another officer failed to take action to protect him. *Ross*, 136 S. Ct. 1850, 1855 (2016). One of the officers raised the PLRA's exhaustion requirement as an affirmative defense, stating that the inmate brought suit without first following the prison's prescribed procedures for obtaining an administrative remedy. *Id.* The district court dismissed the lawsuit for lack of exhaustion, but the Fourth Circuit reversed the lower court's decision, stating that the PLRA's exhaustion requirement was "not absolute" and special circumstances could excuse

exhaustion; such as, when a prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies. *Id.* at 1856. On review, the Supreme Court explicitly rejected the Fourth Circuit's "special circumstances" exception, noting that the exhaustion requirement in the PLRA is statutorily mandated and not amenable to judicially created exceptions. *Id.* The Supreme Court explained that the mandatory language of the PLRA meant that a court may not excuse a failure to exhaust, even to take unusual circumstances into account. *Id.*

Yet, the Supreme Court pointed out in *Ross* that the PLRA does contain one express exception: an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

Plaintiff is a state prisoner. Thus, he is also required to exhaust his administrative remedies in accordance with the West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq.*, prior to filing a federal lawsuit. Nonetheless, even if West Virginia law provides more expansive exceptions to the state's exhaustion requirement than the

exception found in the PLRA, federal court actions are controlled by the PLRA's exhaustion requirement. Therefore, Plaintiff must have exhausted the state's administrative remedies unless they were unavailable to him. *Freeland v. Ballard*, No. 2:14-CV-29445, 2017 WL 337997, at *3 (S.D.W. Va. Jan. 23, 2017) (collecting cases).

In West Virginia, the administrative remedy procedure of an inmate's place of confinement governs the exhaustion process. *White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility *in which he/she is housed.*") (emphasis added). In this case, Plaintiff was housed at the WRJ, a regional jail facility. At the relevant time, exhaustion of administrative remedies in regard to claims involving the conditions of confinement at a regional jail required a final decision from "the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code § 25-1A-2. West Virginia regional jails directed inmates to follow a three-level grievance procedure. At the first step of the process, the inmate submitted a completed written grievance to the Administrator of the facility at which he was confined. If the grievance was rejected by the Administrator, the inmate had five days to appeal the unfavorable decision to the Chief of Operations. If the Chief of Operations also provided a negative response, the final step for the inmate was to timely appeal the decision to the Executive Director. *See Smith v. Adkins*, No. 3:16-CV-12736, 2018 WL 6017040, at *3 (S.D.W. Va. May 4, 2018), *report and recommendation adopted,* No. 3:16-CV-12736, 2018 WL 4481873 (S.D.W. Va. Sept. 19, 2018). Under the procedure, the grievance process was mandated to conclude within sixty (60) days, inclusive of any extensions. *McKenzie v. Delong*, No. 1:17CV154, 2018 WL 3435357, at *3 (N.D.W. Va. July 17, 2018) (citing *Chase v. Trent*, No. 1:11CV108, 2012 WL 5845361, at

*4 (N.D.W. Va. Oct. 16, 2012), report and recommendation adopted, No. 1:11CV108, 2012 WL 5845219 (N.D.W. Va. Nov. 19, 2012).

As stated, exhaustion of remedies is mandatory and has limited exception. *Porter,* 534 U.S. at 524. Plaintiff claims that he exhausted all available state remedies by filing grievances with the WRJ. Plaintiff also alleges that no response was made to some of his grievances, although he was permitted to return to employment at a later date. Plaintiff attaches to his amended complaint a grievance form in which he complains about his termination, and a response to the grievance, reinstating his kitchen assignment.

While the record suggests that Plaintiff may not have exhausted administrative remedies related to the alleged harassment, at this early stage of litigation, neither party has had an opportunity to develop and produce evidence determinative of the exhaustion issue. Based on the limited record before the Court, and Plaintiff's claim that he exhausted all available remedies, it would be premature to dismiss the amended complaint on a lack of exhaustion argument. *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *Spradlin v. Rodes*, No. 3:16-CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849 (S.D.W. Va. Sept. 25, 2017) (same); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his

grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment); *and Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted when remanding *Ross v. Blake*, determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). Therefore, the undersigned **FINDS** that Defendants' motion to dismiss on the ground of lack of exhaustion is premature and should be denied.

### B.    *Failure to State a Claim under § 1983*

Defendants Adria Darlene Hale and Richard Hale argue that Plaintiff's amended complaint fails to state a claim under 42 U.S.C. § 1983 for two reasons: (1) Defendants are employed by a private contractor and, consequently, are not state actors; and (2) the alleged wrongdoing of Defendants does not rise to the level of a constitutional violation. Plaintiff responds that Defendants are state actors, because they provide food service for a state-operated correctional facility. In addition, Plaintiff asserts that he states a viable claim as he has a constitutional right to be free from discrimination based on his sexual orientation.

Defendants' contention that their employment by a private contractor shields them from liability under § 1983 is not entirely correct. To the contrary, in *Conner v. Donnelly*, 42 F.3d 220 (4th Cir. 1994), the Fourth Circuit described the following situations in which

conduct by a private party or entity would constitute "state action:"

> First, a private party that is regulated by the state acts under color of state law where there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. Second a private party acts under color of state law where the State, through extensive regulation of the private party, has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state. Finally, a private party acts under color of state law where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the state.'"

*Id.* at 224 (citations omitted). In the absence of facts establishing one of these situations, however, a § 1983 complaint against a private party must be dismissed as "[p]urely private conduct, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983." *Perrin v. Nicholson*, No. 9:10-1111-HFF-BM, 2010 WL 3893792, at *2 (D.S.C. Sept. 8, 2010); *see also Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961).

The issue of whether Trinity Services Group, Inc. and similar private contractors can be held liable under § 1983 for acts arising from their work at state-operated correctional facilities has been addressed by courts in numerous jurisdictions, with some conflict; although, a majority of the courts have found the contractors to be state actors. *See, e.g., Means v. Rockland Cty. Corr. Facility*, No. 18-CV-8290 (CM), 2019 WL 1596489, at *4 (S.D.N.Y. Apr. 15, 2019) (holding that a private commissary contractor at a state correctional facility "is not transformed into a state actor merely by virtue of any contract to provide stamps or other commissary" it has with the state.); *Harris v. Aramark Incorporation*, No. 2:17-CV-872, 2019 WL 1274728, at *2 (S.D. Ohio Mar. 20, 2019) ("Although there is some divergence in the case law as whether Aramark employees are consider 'state actors' for purposes of § 1983, generally courts in the Sixth Circuit 'have assumed, for purposes of screening that Aramark is a state actor.'"); *Mendoza v. Inch*, No.

14

4:18CV66-RH/CAS, 2019 WL 1901811, at *8 (N.D. Fla. Feb. 20, 2019), *report and recommendation adopted,* No. 4:18CV66-RH-CAS, 2019 WL 1236056 (N.D. Fla. Mar. 17, 2019) (holding that sufficient facts were alleged upon which to find that Trinity was acting under color of state law in the sale of MP3 digital music players at a state correctional facility); *Bader v. Schaaf*, No. 1:18-CV-109-JAR, 2018 WL 6831168, at *3 (E.D. Mo. Dec. 27, 2018) (holding that "[c]ontracted food service providers, like Aramark Food Services, Inc. also can be held liable under § 1983 as a state actor because the food service provider has assumed the state's constitutional obligation to provide a nutritionally adequate diet to inmates"); *Brockman v. McCullick*, No. 17-10399, 2018 WL 3207902, at *2–3 (E.D. Mich. June 29, 2018) (same); *Doe v. Quinones*, No. CV 17-719, 2018 WL 1955133, at *8 (W.D. Pa. Apr. 5, 2018), *report and recommendation adopted,* No. 2:17CV719, 2018 WL 1951094 (W.D. Pa. Apr. 25, 2018) (finding at motion to dismiss stage of litigation that plaintiff's allegations were sufficient to find Trinity employee to be a state actor as she supervised the kitchen service at the county prison.); *Woodstock v. Shaffer*, 169 F. Supp. 3d 1169, 1170 (D. Colo. 2016) (holding that Aramark food service employee at county jail was a state actor.); *Addis v. Arizona Dep't of Corr.*, No. CV14-1115-PHX-DGC BS, 2015 WL 875233, at *4 (D. Ariz. Mar. 2, 2015) ("To state a claim under § 1983 against a private entity performing a traditional public function, the plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity."); *Travillion v. Coffee*, 248 F. App'x 335, 337 (3d Cir. 2007) (assumed, without deciding, that Aramark "was acting under color of state law when it served vegetarian meals at the Allegheny County Jail."). Courts in this circuit and district have found that private contractors like Trinity Services Group, Inc. are state actors for purposes of § 1983 when they voluntarily assume an obligation that

belongs to the State. *See Perry v. Jones*, No. 3:14CV71, 2015 WL 7016519, at *4–5 (E.D. Va. Nov. 12, 2015) (holding that employees of food service contractor at correctional facility were state actors given that state was responsible for providing prisoners with necessary services, such as food and medical care.); *Cockerham v. Allen*, No. CIV.A. 2:13-09589, 2014 WL 1159340, at *6 (S.D.W. Va. Mar. 21, 2014) ("It is well-established that private corporations that are contracted with a state to provide services in a prison are acting 'under color of state law' under section 1983. ... Thus, ARAMARK and its employees were acting under color of state law in the instant case when they served the plaintiff his food.") (citing *West v. Atkins,* 487 U.S. 42, 54 (1988); *Cherry v. Platt,* No. 3:10–cv–629–RJC, 2012 WL 868897, at *4 & n. 4 (W.D.N.C. Mar.13, 2012) (finding employees of private contractor that supplied food services to prisoners were acting under color of state law). Certainly, for the purposes of withstanding a motion to dismiss, courts have assumed that private contractors, who perform a traditional public function, are subject to liability for constitutional deprivations asserted under § 1983. *See, e.g., Doe,* 2018 WL 1955133, at *8; *Mendoza*, 2019 WL 1901811, at *8; *Horton v. Sheriff of Cook Cty.*, No. 11 C 6064, 2012 WL 5838183, at *2 (N.D. Ill. Nov. 16, 2012); *Coleman v. ARAMARK,* 31 F. App'x 808, 809 (4th Cir. 2002). Therefore, the undersigned **FINDS** that Defendants' motion for dismissal on the ground that they are not state actors subject to liability under § 1983 is unpersuasive.

With respect to Defendants' assertion that they are entitled to dismissal because the amended complaint fails to include factual allegations "that would suggest the Defendants were personally involved in any constitutional deprivation," the undersigned disagrees with Defendants' interpretation of the amended complaint. (ECF No. 18 at 5-6). Plaintiff expressly states in the amended complaint that both Adria Darlene Hale and

16

Richard Hale verbally harassed and degraded Plaintiff on a daily basis for approximately six months. (ECF No. 5 at 1). Plaintiff also states that after he was fired on falsified charges of misconduct, Adria Darlene Hale refused to allow Plaintiff to return to work. When she was forced to accept Plaintiff's return, Defendant Adria Darlene Hale demoted Plaintiff. Accordingly, the amended complaint does charge Defendants with personal wrongdoing.

Defendants further contend that the alleged violations attributed to them "do not rise to the level of a constitutional violation." (ECF No. 18 at 8). While Defendants do not extrapolate on this argument, for the reasons more fully explained in Section E, *infra*, the undersigned agrees with Defendants and **FINDS** that the allegations in the amended complaint do not state a viable claim of constitutional deprivations.

### C.    *Respondeat Superior*

Defendants Adria Darlene Hale and Richard Hale contend that Plaintiff's amended complaint fails as a matter of law, because it is improperly based on the doctrine of *respondeat superior*. Under the doctrine of *respondeat superior,* an employer or supervisor may be held liable for the acts of an employee or subordinate acting within the scope of his employment. While claims premised on *respondeat superior* are not permitted under 42 U.S.C. § 1983, government officials may nevertheless be held liable for the constitutional violations of those in their charge when the violations occur in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Department of Social Services of City of N.Y.,* 436 U.S. 658, 694 (1978). Furthermore, in the setting of a correctional facility, liability may arise when "supervisory indifference or tacit authorization of subordinates' misconduct [is] a causative factor in the constitutional injuries [the subordinates] inflict on those committed to their care." *Shaw v. Stroud,* 13

F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter,* 737 F.2d 368, 372-73 (4th Cir. 1984)).

Contrary to Defendants' contention, Plaintiff does not appear to allege liability under the doctrine of *respondeat superior.* Instead, Plaintiff seeks to hold the three individual defendants liable for *their own acts*, regardless of whether a policy or custom existed. Plaintiff does not name Trinity Services Group, Inc. as a defendant in the lawsuit, nor does he explicitly assert that any defendant is responsible for the acts of a subordinate. Accordingly, as the amended complaint does not assert supervisory or employer liability, the undersigned **FINDS** that this ground for dismissal is without merit.

### D.    *Failure to Allege a Factual Basis for Money Damages*

Defendants argue that Plaintiff cannot maintain a claim for money damages in view of the preclusion set forth in the PLRA, 42 U.S.C. § 1997e(e). As stated, section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" referenced by the Act need not be significant, but must be more than *de minimis. See, e.g., McAdoo v. Martin,* 899 F.3d 521, 525 (8th Cir. 2018); *West v. United States,* 729 F. App'x  145, 148, (3d Cir. 2018) (citing *Mitchell v. Horn,* 318 F.3d 523, 526 (3d Cir. 2003)); *Brooks v. Warden,* 800 F.3d 1295, 1307 (11th Cir. 2015);  *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010); *Pomier v. Leonard,* 532 F. App'x 553 (5th Cir. 2013); *Lanier v. Hands,* No. 5:17-CT-3042-FL, 2017 WL 3841875, at *3 (Sept. 1, 2017); *Watson v. Edelen,* 76 F. Supp.3d 1332, 1378 (N.D. Fla. 2015); *Calderon v. Foster*, No. 5:05-CV-00696, 2007 WL 1010383, at *5 (S.D.W. Va.

Mar. 30, 2007), *aff'd sub nom. Calderon v. Corr. Officer Foster*, 264 F. App'x 286 (4th Cir. 2008); *Zehner v. Trigg*, 952 F. Supp. 1318 (S.D. Ind. 1997).

Defendants emphasize that, in the amended complaint, Plaintiff alleges that he was "deeply scared" and "hurt" by the verbal harassment he allegedly endured, but does not describe suffering any physical injury. For that reason, Defendants assert, Plaintiff's claim for money damages must be dismissed. However, in his response in opposition to the motion to dismiss, Plaintiff indicates that he did, in fact, suffer physical injuries from the Defendants' constitutional violations; including, intestinal distress, nausea, headaches, and diarrhea. (ECF No. 5 at 4). In Plaintiff's view, these conditions satisfy the physical injury requirement of the PLRA.

As a general rule, courts have agreed that conditions such as nausea, vomiting, weight loss, headaches, cramping, aches and pains, itching, and cold sweats are insufficient to meet the "physical injury" requirement of 42 U.S.C. § 1997e(e). *See, e.g, Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (finding that § 1997e(e) barred recovery where the only physical injuries suffered by plaintiffs were nausea and vomiting); *Chatham v. Adcock,* 334 F. App'x 281,285 (11th Cir. 2009)(claims of anxiousness, nausea, nightmares, hallucinations, and fluctuating blood pressure are not sufficient to satisfy § 1997e(e)); *Jarriet v. Wilson,* 162 F. App'x 394, 401 (6th Cir. 2005) (finding that "swelling, pain, and cramps" constituted *de minimis* injuries). In addition, some courts have held  physical manifestations of emotional distress simply do not qualify as "prior physical injuries" under § 1997e(e). *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) ("Both the explicit requirement of § 1997e(e) that the physical injury be "prior," and the statutory purpose of discouraging frivolous suits, preclude reliance on the somatic manifestations of emotional distress Davis alleges.");

*Hughes v. Colorado Dep't of Corr.*, 594 F. Supp.2d 1226, 1238 (D. Colo. 2009) ("A straightforward reading of Section 1997e(e) requires that a prisoner cite a physical injury that is separate from mental and emotional injuries he may have suffered."); *Felix v. Nw. State Corr. Facility*, No. 2:15-CV-149, 2016 WL 1048028, at *2 (D. Vt. Mar. 11, 2016) (holding that physical manifestations of emotional distress are not physical injuries for purposes of the PLRA); *Darvie v. Countyman,* No. 9:08–cv–0715, 2008 WL 2725071, at * 7 (N.D.N.Y. July 10, 2008), *report and recommendation adopted by* 2008 WL 3286250 (Aug. 7, 2008) ("[T]o the extent Plaintiff is trying to allege an Equal Protection violation based on a "physical injury" that was essentially *emotional* in nature (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.), such a claim would appear barred also by the Prison Litigation Reform Act of 1995."). In at least one case from this district, the Court agreed that while conditions such as headaches, intestinal problems, cold sweats, rashes, nightmares, teeth grinding, and vomiting may be considered *de minimus* injuries that fail to satisfy the requirements of § 1997e(e), such a determination is often difficult to make early in the litigation. *Gilmore v. Bostic*, 636 F. Supp.2d 496, 514-15 (S.D.W. Va. 2009). In *Gilmore*, the plaintiff complained that false  information in his presentence report led to his designation as a sex offender and resulted in a higher classification level in the state penal system. Plaintiff's distress over this error and its consequences caused the array of symptoms and conditions described above. The defendants moved to dismiss the complaint on the ground that Plaintiff's alleged physical injuries were insufficient to meet the requirements of the PLRA. The defendants relied on five cases in asserting their position.

Examining the cases cited by the defendants, the Court found three of them to be

distinguishable because in all three cases "the court was resolving a motion for summary judgment, rather than a motion to dismiss." *Id.* Accordingly, the parties had conducted discovery and "each court was aware of the extent of the plaintiff's injuries when it rejected the plaintiff's claims as failing to allege an injury that rises to the level of a constitutional violation." *Id.* The Court added:

> As earlier noted, a court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. Allegations, however inartfully pled by a *pro se* plaintiff, are sufficient to afford a plaintiff an opportunity to offer supporting evidence unless it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief. While a court should not develop tangential claims from scant allegations, if a *pro se* plaintiff's complaint contains potentially cognizable claims, the plaintiff should be allowed to particularize these claims. Although the plaintiff has not alleged the severity or frequency of his stomach and lower intestinal problems, headaches, cold sweats, rashes, nightmares and vomiting, and his teeth grinding in the complaint, which was *pro se* when filed, the court should presume for the purposes of this motion that they are severe and continuous.

*Id.* (internal citations and markings omitted). For that reason, the Court denied the defendants' motion to dismiss and allowed the parties to conduct discovery so as to establish the severity of the plaintiff's alleged physical injuries.

In this case, Defendants have not addressed the issue of whether Plaintiff's alleged physical injuries are *de minimus,* or are merely physical manifestations of emotional distress, rendering them insufficient to meet the requirement of § 1997e(e). Indeed, Defendants do not discuss the alleged physical injuries at all. Plaintiff did not claim physical injuries in the amended complaint; instead, he first asserted them in his response to Defendants' motion to dismiss. Still, Defendants had the right and opportunity to file a reply memorandum and oppose the significance of the late-identified physical injuries, but they chose not to do so. Accordingly, given the current posture of the case, the undersigned **FINDS** that dismissal on the basis that Plaintiff fails to state a physical

injury consistent with the mandate of the PLRA is premature.

### E.   Plaintiff Fails to State a Constitutional Claim Against Defendants Adria Darlene Hale and Richard Hale

Notwithstanding the alleged loathsome behavior of Defendants Adria Darlene Hale and Richard Hale, as described by Plaintiff in the amended complaint, Plaintiff fails to state a constitutional claim against said Defendants. "Taunting comments and slurs by [prison officials] are unprofessional and reprehensible, but do not in and of themselves support a claim of constitutional violation." *Johnson v. Robinette*, No. CV GJH-17-3401, 2019 WL 1331310, at \*4 (D. Md. Mar. 22, 2019) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Cole v. Cole,* 633 F.2d 1083, 1091 (4th Cir. 1980); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973)). The law is well-settled that verbal abuse of inmates by correctional facility staff, without more, is not actionable under § 1983. *See Tokley v. Ratliff*, No. CIV A 707CV00109, 2007 WL 1046955, at \*1 (W.D. Va. Apr. 3, 2007) (citing *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990)); *also Rahn v. Barksdale,* No. 7:11-cv-00563, 2011 WL 6131076, at \* 2 (W.D. Va. Dec. 8, 2011) (holding that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety" do not amount to constitutional violations.); *Owens v. Vanmeter*, No. CIV.A. RWT-09-1780, 2010 WL 817315, at \*3, n. 5 (D. Md. Mar. 4, 2010) ("The use of racist epithets, while offensive, is not actionable under 42 U.S.C. § 1983.") (collecting cases); *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); *Burdos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("[T]hreats and offensive language do not constitute an actionable adverse action under § 1983."); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th

Cir. 2002) (holding that verbal taunts and racial slurs do not give rise to liability under §
1983); *and Haywood v. Gifford*, No. 1:17-CV-398, 2017 WL 5633316, at *4 (S.D. Ohio
Oct. 4, 2017), *report and recommendation adopted*, No. 1:17-CV-398, 2017 WL 5598167,
at *4 (S.D. Ohio Nov. 21, 2017) ("[I]t is well-settled that '[v]erbal harassment or idle
threats by a state actor do not create a constitutional violation and are insufficient to
support a section 1983 claim for relief.'") (citing *Wingo v. Tennessee Dep't of Corp.*, 499
F. App'x 453, 455 (6th Cir. 2012)).

In his amended complaint, Plaintiff details a host of inappropriate comments made
by Richard and Adria Darlene Hale regarding Plaintiff's sexual orientation. (ECF No. 5).
Plaintiff explains that he felt degraded and humiliated, but he does not allege that either
of the Hales took any other action against him. Plaintiff does state that after he was
terminated from his position in the kitchen, Defendant Adria Darlene Hale attempted to
prevent him from being reinstated; however, Plaintiff does not include any factual
allegations in support of this conclusory statement. Moreover, Plaintiff alleges that when
he did return to the kitchen a few months later, Defendant Adria Darlene Hale expressed
a desire to "forget [their] differences" and assigned him to a shift where he would not have
to work with Defendant Hill. (*Id.* at 2). Accordingly, the undersigned **FINDS** that Plaintiff
fails to state a claim of constitutional proportion against Defendants Adria Darlene Hale
and Richard Hale.

### F.    *Claims Against Lakken Hill*

Preliminarily, the undersigned takes note that Defendant Lakken Hill was not
served with process in this case. (ECF No. 26). According to the United States Marshals
Service, attempts were made to serve Defendant Hill, but she could not be located. (*Id.*).
Plaintiff did not provide the Marshals Service with a residence address for Defendant Hill,

and efforts to serve her at the WRJ were unsuccessful. After more than six months without service being effected, the Marshals Service returned the unexecuted summons at the direction of the Court.

In addition to the lack of service of process, Plaintiff's amended complaint fails to state a claim against Defendant Hill. For the reasons set forth above, Plaintiff cannot maintain a constitutional claim based on Defendant Hill's alleged verbal harassment alone. While Plaintiff accuses Defendant Hill of going further than mere harassment by taking steps to effect Plaintiff's termination from employment, "[p]risoners do not have a constitutionally protected right to work while detained or incarcerated or to remain in a particular job assignment once assigned." *Cofield v. Hogan*, No. CV CCB-16-3037, 2018 WL 1535493, at *8 (D. Md. Mar. 27, 2018); *Morris v. Samuels*, No. 2:14-CV-18, 2015 WL 4893185, at *4 (N.D.W. Va. Aug. 17, 2015), *aff'd,* 631 F. App'x 139 (4th Cir. 2016) (citing *Johnson v. Knable,* 862 F.2d 314 (4th Cir.1988) ("prison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate.")); *Walker v. Owens*, No. 7:13CV00425, 2015 WL 1417070, at *5 (W.D. Va. Mar. 27, 2015) (holding that a prisoner "has no protected interest in maintaining [his] job" and does not assert a constitutional claim even if his termination was a violation of prison operating procedures.).

Notwithstanding the absence of a constitutional right to work, Plaintiff "does enjoy constitutional protections under the Equal Protection Clause of the Fourteenth Amendment" against illegal discrimination involving his prison employment. *Kyles v. Collie*, No. 6:12-CV-02761-JMC, 2014 WL 469008, at *4 (D.S.C. Feb. 4, 2014) (citing *Bentley v. Beck*, 625 F.2d 70, 70–71 (5th Cir.1980)); *also  Johnson v. Knable,* 862 F.2d 314 (4th Cir. 1988) (holding that if the plaintiff "was denied a prison work assignment

simply because of his sexual orientation, his equal protection rights may have been violated."). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* In other words, if Plaintiff's amended complaint supports the conclusion that Defendant Hill instigated the termination of Plaintiff's employment due to his acknowledged homosexuality, then an equal protection claim may exist.

Even after piecing together the facts from Plaintiff's complaint and amended complaint, and considering them in the light most favorable to Plaintiff, the undersigned **FINDS** that the amended complaint fails to satisfy the two prongs of a *prima facie* equal protection claim. Plaintiff alleges that in mid-July 2018, Lakken Hill, a shift supervisor in the WRJ's kitchen, falsely accused Plaintiff and another inmate, Billy Vegas, of smoking in the stock room and of threatening her. (ECF No. 2 at 4; ECF No. 5 at 2). Plaintiff and Billy Vegas were subsequently fired and not permitted to return to work, although other inmates who had been written-up for tobacco use were allowed to return to their job assignments. (ECF No. 2 at 4). According to Plaintiff, he filed a grievance that allegedly was not answered, so he filed a second grievance on October 28, 2018, which is attached to the amended complaint. (ECF No. 5 at 2, 5). In the October grievance, Plaintiff complained that he was fired from his kitchen job without "a write up or even an incident report" and asked that he be returned to his job on another shift, or have his grievance submitted to the DCR Regional Office. (*Id.* at 5). In response to this grievance form,

Plaintiff was returned to his job assignment effective November 1, 2018 and was placed on a different shift, just as he requested. (ECF No. 5 at 2, 6).

As the allegations in these pleadings demonstrate, Plaintiff has not established that he was treated differently from others similarly situated and that his poor treatment was motivated by a discriminatory animus. As Plaintiff's own factual recitation makes clear, another inmate, who is not described as being gay, was likewise terminated from his kitchen assignment based on an accusation that he was smoking with Plaintiff and threatening the shift supervisor. Thus, two similarly situated individuals were treated in the same manner. Moreover, Plaintiff implicitly indicates that other prisoners accused of using tobacco were terminated from their inmate work assignments; suggesting that smoking on the job typically leads to the termination of inmate employment, regardless of the inmate's gender, race, religion, or sexual orientation. Like these other inmates, who Plaintiff claims were allowed to return to their jobs, Plaintiff was returned to his job and given a shift that kept him separated from the supervisor that purportedly machinated his termination. Once again, as verified by his own allegations, Plaintiff was treated in the same way as other similarly situated inmates. Consequently, as the amended complaint fails to include facts that establish the basic elements of a *prima facie* equal protection claim, the undersigned **FINDS** that Plaintiff's amended complaint fails to state a claim against the unserved defendant, Lakken Hill.

Finally, Plaintiff asserts that his due process rights were violated by his termination from the kitchen. Given that Plaintiff has no constitutional right to prison employment, his termination arguably does not trigger the protections of the Due Process Clause. *See Daniels v. Jarett,* No. 3:13CV440, 2014 WL 11514222, at *2 (E.D. Va. July 22, 2014) (citing *Bulger v. U.S. Bureau of Prisons,* 65 F.3d 48, 50 (5th Cir. 1990)). However, even

assuming that Plaintiff was entitled to due process related to his termination from employment, the undersigned **FINDS** that he fails to state a claim, because he essentially received due process. Plaintiff filed a grievance with the WRJ's superintendent, who authorized that Plaintiff be returned to his kitchen assignment. As such, the best result that Plaintiff could have achieved through a post-termination due process hearing was obtained through the grievance process.

## IV.    <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the Motion to Dismiss of Defendants Adria Darlene Hale and Richard Hale, (ECF No. 17), be **GRANTED** and the amended complaint be **DISMISSED** against them; that the claims against Defendant Lakken Hill be **DISMISSED** on the grounds that the amended complaint fails to state a claim and that Defendant Hill has not been served with process and could not be located by the United States Marshals Service; and that this action be **REMOVED** from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** June 27, 2019

Cheryl A. Eifert
United States Magistrate Judge